STUART E. RAGAN, ESQ. #6571
55 N. Church St. #55-A
Wailuku, Hawaii 96793
Tel: (808) 879-3352
Raganesq@gmail.com

Representing Plaintiff LOTHAR KUSTER

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LOTHAR KUSTER,<br><br>          Plaintiff,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC;<br>DEUTSCHE BANK NATIONAL TRUST<br>COMPANY, AS TRUSTEE FOR GSAMP<br>TRUST 2004-NC2; JOHN DOES 1-10;<br>JANE DOES 1-10; DOE PARTNERSHIPS<br>1-10; DOE CORPORATIONS 1-10; DOE<br>ENTITIES 1-10; and DOE<br>GOVERMENTAL UNITS 1-10,<br><br>          Defendants. | CIVIL NO. 15-cv-00305<br><br><br>COMPLAINT; EXHIBITS "1"-"3";<br>SUMMONS |

## COMPLAINT

COMES NOW Plaintiff LOTHAR KUSTER (hereinafter "KUSTER") by and through

his attorney, STUART E. RAGAN, before this Honorable Court, and respectfully allege as

follows:

## I.    INTRODUCTION

1.  This is a civil action filed by KUSTER against Defendants OCWEN LOAN

    SERVICING, LLC (hereinafter "OCWEN") and DEUTSCHE BANK NATIONAL

    TRUST COMPANY, AS TRUSTEE FOR GSAMP TRUST 2004-NC2 (hereinafter

    "DEUTSCHE") in accordance with 28 U.S.C. 1332  and the Fair Debt Collection

Practices Act under 15 USCS § 1692 for damages arising from a breach of contract in accordance with HAW.STAT.tit. 27, §1-304 for conduct in violation of the Implied Covenant of Good Faith and Fair Dealing for compensatory and punitive damages, Unfair and Deceptive Acts or Practices ("UDAP") in violation of Hawaii Revised Statues §480, HRS §480-2 and §480-13, tort liability for breach of contract in accordance with HRS §663-1.2, tortious interference with a business relationship that transcends the contract, monetary and punitive damages in accordance with HRS §663-1.2, violation of the Fair Debt Collection Practices Act under 15 USCS § 1692, acting in Bad Faith by breaching the industry standard established for servicing standards in the National Mortgage Settlement, failure to observe corporate formalities, and creating a break in the chain of title related to the lending and servicing of KUSTER's mortgage.

2. KUSTER initially financed real property address 0 W Waipio Road, Haiku, Hawaii, 96708 (hereinafter "Property"), also known as HCR1 Box 113, Haiku, Hawaii 96708 on or about July 16, 2004. See Exhibit "1".

3. NEW CENTURY MORTGAGE CORPORATION financed KUSTER's Property through a mortgage signed July 16, 2004 and filed in the Bureau of Conveyances as Document No. 2004-165630 (hereinafter "Mortgage").

4. DEUTSCHE is the alleged assigned mortgagee of KUSTER's Mortgage.

5. OCWEN is the assigned servicer of KUSTER's Mortgage.

6. Each of the allegations regarding Defendants contained herein applies to instances in which one or all of the Defendants engaged in the conduct alleged.

## II.  PARTIES

7. This action is brought by KUSTER who is, and at all times relevant herein, a resident of the State of Hawaii, County of Maui.

8. DEUTSCHE is a German global banking and financial services company with its headquarters in Frankfurt, and its United States regional headquarters located in New York City, New York.

9. OCWEN is a Delaware Corporation with a principal place of business located at 1661 Worthington Road Suite 100, West Palm Beach, FL 33409.

10. DEFENDANT JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, DOE ENTITIES 1-10, and DOE GOVERMENTAL UNITS 1-10 are being sued herein under fictitious names as they are persons, partnerships, corporations, entities, or governmental units whose identities and names are unknown to KUSTER, in spite of KUSTER's due diligence and attempt to determine said Doe Defendant's identities, names and involvement in the conduct of the Defendant and are therefore named herein as persons and or entities who were at any time relevant to the allegations in this Complaint, partners, principals, agents, coconspirators, joint tortfeasors, sureties, guarantors, and/or attorneys at law for or with the Defendant herein. KUSTER seeks leave to amend this Complaint at such time when identities of said Defendant become known to KUSTER in order to identify and join said Doe Defendant to this action.

11. For this Complaint, Defendant DEUTSCHE collectively refers to all of its affiliated entities, during or prior to such time as they were affirmed.

12. For this Complaint, Defendant OCWEN collectively refers to all of its affiliated entities, during or prior to such time as they were affirmed.

## III.  <u>JURISDICTION AND VENUE</u>

13. The Court has jurisdiction over the lawsuit as it includes violations of the Fair Debt Collection Practices Act (FDCPA) thereby creating a federal ingredient that provides the basis for Federal jurisdiction.

14. Jurisdiction is proper over this lawsuit as KUSTER resides in the State of Hawaii, County of Maui, the property at issue is located in the State of Hawaii, County of Maui, and the contract at issue was signed and recorded in the State of Hawaii.

15. Jurisdiction is proper over this Complaint against OCWEN and DEUTSCHE for damages arising from a breach of contract in accordance with HAW.STAT.tit. 27, §1-304 for conduct in violation of the Implied Covenant of Good Faith and Fair Dealing for compensatory and punitive damages, Unfair and Deceptive Acts or Practices in violation of Hawaii Revised Statues §480, HRS §480-2 and §480-13, tort liability for breach of contract in accordance with HRS §663-1.2, tortious interference with a business relationship that transcends the contract, monetary and punitive damages in accordance with HRS §663-1.2, violation of the Fair Debt Collection Practices Act under 15 USCS § 1692, acting in Bad Faith by breaching the industry standard established in the National Mortgage Settlement, failure to observe corporate formalities, and Hawaii Revised Statutes § 490:1-304 related to the lending servicing of KUSTER's mortgage.

16. This Court has personal jurisdiction over OCWEN and DEUTSCHE as they transacted business in this District and have committed the violations in this District.

## IV.   <u>BACKGROUND</u>

### A.  The Single Family Mortgage Industry

17. The single family mortgage industry consists of financial services and other firms that originate, underwrite, securitize, and service mortgages for residential properties designed to house one- to four-family dwellings.

18. Mortgage origination is the process whereby a lender loans money to a borrower and receives a security interest in property, through a mortgage or comparable device that secures the loan. Origination generally includes all the steps from receiving a loan application through disbursal of the loan proceeds.

19. For more than thirty years, mortgages typically have been "pooled" to create an investment vehicle, often denominated as a trust, and interests in the trusts have been sold to investors that own interests in payment streams generated by principal and interest payments by the borrowers.

20. After mortgages are originated, a "servicer" is responsible for mortgage administration activities, known as servicing activities, which generally include collecting payments from mortgagors; applying payments made in an agreed-upon order to the mortgagor's indebtedness; distributing payments after allowable deductions to the investment trust entities for distribution to investors; making advances to cover delinquent mortgage payments and other costs, such as the costs of protecting and maintaining properties that collateralize mortgage loans when mortgagors fail to do so; pursuing collections from delinquent mortgagors; and pursuing either loss mitigation or foreclosure, as appropriate, to minimize the loss to investors and others when mortgagors become delinquent on mortgage payments.

**B. THE UNITED STATES' STIMULUS / RESCUE EFFORTS**

21. Beginning in the fall of 2008, the federal government instituted several measures to try to stabilize the housing and credit markets and assist troubled homeowners.

22. In October 2008, the Emergency Economic Stabilization Act of 2008 (EESA) was passed to promote stability and liquidity in the financial system. Among other things, EESA authorized the Secretary of the Treasury (hereinafter "Treasury") to establish the Troubled Asset Relief Program (TARP). TARP funds were used, in part, to promote various mortgage loan modification programs.

23. *The Making Home Affordable (MHA) Program.* In March 2009, the United States launched the MHA Program. The MHA Program included the Home Affordable Modification Program (HAMP), a Treasury program that use TARP funds to provide incentives for mortgage servicers to modify eligible first lien mortgages.

24. HAMP uses incentive payments to encourage loan servicers and owners of mortgage loans or bonds backed by mortgage loans to modify eligible first lien mortgages so that monthly payments that are in default, or at imminent risk of default, will be reduced to affordable and sustainable levels.

25. *The Home Price Decline Protection Incentives (HPDP) initiative.* The HPDP initiative is designed to encourage modifications of loans in markets hardest hit by falling home prices. The HPDP initiative provides investors with additional incentives for loan modifications on properties located in areas where home prices have recently declined and where investors are concerned that price declines may persist.

26. *The Principal Reduction Alternative (PRA).* PRA is designed to encourage the use of principal reduction in modifications for eligible borrowers whose homes are worth significantly less than the remaining outstanding principal balances of their first-lien mortgage loans. It provides investor incentives to offset a portion of the principal reduction.

27. *The Home Affordable Unemployment Program (UP).* UP is designed to offer assistance to unemployed homeowners through temporary forbearance of a portion of their mortgage payments.

28. *The Home Affordable Foreclosure Alternatives Program (HAFA).* HAFA is designed to provide incentives to servicers, investors and borrowers to utilize short sales and deeds-in-lieu of foreclosure for HAMP-eligible loans in cases in which the borrower can no longer afford to stay in their home but want to avoid foreclosure. Under this program, the servicer releases the lien against the property and the investor waives all rights to seek a deficiency judgment against a borrower who uses a short sale or deed-in-lieu when the property is worth less than the outstanding principal balance of the mortgage.

29. *The Second Lien Modification Program (2MP).* 2MP is designed to modify second lien mortgages when a corresponding first lien is modified under HAMP.

30. *The FHA-HAMP Program.* The FHA-HAMP Program is designed to provide compensation to the holders and servicers of FHA-insured mortgages that are modified under FHA-HAMP, to reduce payments to more affordable levels.

31. *The Treasury/FHA Second-Lien Program (FHA2LP).* FHA2LP is designed to facilitate refinancing under the FHA Short Refinance Program by reducing second liens. Treasury provides incentives to participating servicers and investors who agree to partial or full extinguishment of second liens associated with an FHA refinance.

32. *The FHA Refinance for Borrowers with Negative Equity (FHA Short Refinance) Program.* This program is partially supported by TARP funds and allows servicers and investors to reduce a borrower's principal balance on a non-FHA-insured, existing, and underwater, first-lien mortgage loan in connection with a refinancing to obtain FHA insurance on the newly refinanced mortgage. The Treasury has provided a TARP-funded letter of credit for up to eight billion dollars in loss coverage on these newly refinanced FHA loans.

## C. THE JOINT STATE-FEDERAL SETTLEMENT WITH FIVE LARGEST MORTGAGE SERVICERS

33. On February 9, 2012, the attorneys general of 49 states and the District of Columbia (every state but Oklahoma), the federal government and five banks and mortgage servicers (Bank of America, Citi, JPMorgan Chase, the ResCap Parties and Wells Fargo) reached agreement on the National Mortgage Settlement (NMS) that created new servicing standards, provided for relief to distressed homeowners and provided funding for state and federal governments. The NMS was made formal and binding on April 5, 2012, when the United States District Court of the District of Columbia (Court) entered the consent judgments containing the Settlement terms.

34. The settlement provides benefits to borrowers in the signing states whose loans are owned by the settling banks as well as to many of the borrowers whose loans they service.

35. The settlement provides immediate aid to homeowners needing loan modifications now, including first and second lien principal reduction.  The servicers are required to work off up to seventeen billion dollars in principal reduction and other forms of loan modification relief nationwide.

36. The settlement provides the first ever nationwide reforms to servicing standards; something that no other federal or state agency has been able to achieve. These servicing standards require single point of contact, adequate staffing levels and training, better communication with borrowers, and appropriate standards for executing documents in foreclosure cases, ending improper fees, and ending dual-track foreclosures for many loans.

37. Servicers will have to pay heavy penalties for non-compliance with the settlement, including missed deadlines.

38. The National Mortgage Settlement establishes 304 new servicing standards, or rules, that are designed to correct practices such as robo-signing and to provide benefits to homeowners.

39. The Monitor must apply a series of 29 metrics or tests to measure how well the banks are following the new servicing standards. Although not every servicing standard is associated with a metric, the banks must comply with all servicing standards.

40. Servicer shall maintain adequate staffing and systems for tracking borrower documents and information that are relevant to foreclosure, loss mitigation, and other Servicer operations. Servicer shall make periodic assessments to ensure that its staffing and systems are adequate.

41. Servicer shall not instruct, advise or recommend that borrowers go into default in order to qualify for loss mitigation relief.

42. An industry standard for lending and servicing mortgages was established by the National Mortgage Settlement in 2012.

## D. THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

43. The Fair Debt Collection Practices Act (FDCPA), codified as 15 U.S.C. § 1692 –1692p, approved on September 20, 1977 (and as subsequently amended) is a consumer protection amendment, establishing legal protection from abusive debt collection practices, to the Consumer Credit Protection Act, as Title VIII of that Act. The statute's stated purposes are: to eliminate abusive practices in the collection of consumer debts, to promote fair debt collection, and to provide consumers with an avenue for disputing and obtaining validation of debt information in order to ensure the information's accuracy. The Act creates guidelines under which debt collectors may conduct business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies for violations of the Act.

## V.   **FACTUAL ALLEGATIONS**

44. OCWEN services the Mortgage secured by the Property owned by KUSTER.

45. DEUTSCHE is the owner or "trustee" of the Mortgage secured by the Property owned by KUSTER.

## 1. OCWEN AND DEUTSCHE'S UNFAIR AND DECEPTIVE ACTS OR PRACTICES

46. OCWEN and DEUTSCHE engaged in Unfair and Deceptive Acts or Practices regarding KUSTER's Mortgage.

47. OCWEN violated numerous servicing standards that OCWEN agreed were acceptable behavior as shown in the Consent Judgment in the United States District Court for the District of Columbia, Case No. 13-cv-2025, showing OCWEN has knowledge of acceptable servicing standards and has engaged in Unfair and Deceptive Acts or Practices and acted in bad faith in servicing KUSTER's Mortgage.

48. As the loan servicer, OCWEN has a responsibility to exercise reasonable business judgment of behalf of the Lender, "…a loan servicer is obligated to perform under a contract using its reasonable business judgment" *San Fernando Lenders, LLC v. Compass USA SPE LLC (In re United States Commer. Mortg. Co.), 2013 U.S. Dist. LEXIS 108183, *24, 2013 WL 3944184 (D. Nev. July 30, 2013)*. OCWEN has engaged in Unfair and Deceptive Acts or Practices while acting in bad faith regarding the servicing of KUSTER's Mortgage by acknowledging written requests but not answering the questions stated in such requests, misapplication of payments, fraudulent fee's due to misapplication of payments, failure to correct inaccuracies in KUSTER's account even though they had been informed of the exact dates and amounts of the inaccuracies, and failing to correct the errors asserted by KUSTER or provide an investigation into the errors.

49. In *Lizza v. Deutsche Bank Nat'l Trust Co., 1 F. Supp. 3d 1106, 1122, 2014 U.S. Dist. LEXIS 25140, *39 (D. Haw. 2014)* the Court held that the following test should be applied to a UDAP claim which provides in pertinent part: "to comply with the specificity requirement of Rule 9(b). Plaintiffs must allege a violation of Haw. Rev. Stat. Ch. 480, an injury, and proof of the amount of damages. Haw. Rev. Stat. 480-2, 480-13." In the instant case, the injury KUSTER sustained is for charges of excessive interest, penalties, legal fees and costs, and late fees in the amount equal to all fraudulent inspection fees, all late charges, all interest based off of the principal balance that did not reflect all payments made by KUSTER, and all legal fees charged as a result of the misapplication of payments. The next element cited in *Lizza* was the proof of the amount of damages and the date of occurrence. OCWEN and DEUTSCHE violated Hawaii Revised Statutes §480 from August 31, 2011 through March 2, 2013 and have continued

these violations by failing to correct errors and misappropriation of payments, failing to respond to written requests from KUSTER acknowledging a signed agreement for a repayment plan, failing to apply payments to the Mortgage that had been automatically withdrawn from KUSTER's bank account, charging excessive late fees and interest, failing to apply additional payments made to the Mortgage by KUSTER, and charging property inspection fees without an inspection ever being done of the Property. See Exhibits "2" and "3".

50. Under Hawaii Revised Statutes § 480-2, OCWEN and DEUTSCHE are prohibited from engaging in Unfair and Deceptive Acts or Practices with respect to consumers.

51. In the course of their conduct, management and oversight of the Mortgage for the Property, OCWEN and DEUTSCHE have engaged in a pattern of Unfair and Deceptive Acts or Practices breaching Hawaii Revised Statutes §480 and § 480-2.

52. OCWEN and DEUTSCHE failed to meet their obligations or exercise good business judgment as the servicer and lender, respectively, to KUSTER's Mortgage by breaching various servicing standards and acting in bad faith in the following areas:

   a. Failing to correct errors in KUSTER's account.
   b. Misapplication of payments and inaccurate accounting.
   c. Failing to respond to qualified written requests with answers to the questions and demands stated.
   d. Charging interest off of an inaccurate principal balance.
   e. Fraudulent charges for late fees and property inspection fees.

53. As the Lender of KUSTER's Mortgage, DEUTSCHE engaged in Unfair and Deceptive Acts and Practices by breaching the Mortgage Contract with KUSTER and failing to oversee the servicing of the Mortgage as the owner and beneficiary of the loan.

**2. OCWEN AND DEUTSCHE'S BAD FAITH AND VIOLATION OF THE IMPLIED COVENANT OF**

GOOD FAITH AND FAIR DEALING

54. In the course of their conduct, management and oversight of loan servicing of KUSTER's mortgage loan OCWEN and DEUTSCHE have engaged in a pattern of practices breaching Hawaii Revised Statutes § 490:1-304.

55. OCWEN and DEUTSCHE failed to meet their obligations or exercise good business judgment as the servicer and lender, respectively, to KUSTER's Mortgage by breaching acceptable servicing standards and acting in Bad Faith, thereby violating the Implied Covenant of Good Faith and Fail Dealing, in the following areas:

   a. Failing to correct errors in KUSTER's account.

   b. Misapplication of payments and inaccurate accounting.

   c. Failing to respond to qualified written requests with answers to the questions and demands stated.

   d. Charging interest off of an inaccurate principal balance.

   e. Fraudulent charges for late fees and property inspection fees.

56. In the course of their conduct, management and oversight of loan servicing of KUSTER's Mortgage, qualified written requests, and application of payments, OCWEN and DUETSCHE have acted in bad faith by breaching the industry standards established for servicing standards, exercised poor business judgment, and violated the Implied Covenant of Good Faith and Fair Dealing.

57. OCWEN and DEUTSCHE acted in bad faith by breaching the duty imposed as consequence of relationship established by contract.

58. OCWEN and DEUTSCHE acted in bad faith in the following ways:

   a. refusal to fulfill their obligations as the servicer to KUSTER's Mortgage,

   b. failing to oversee and verify the servicing of KUSTER's Mortgage as the owner of the loan,

c. failing to mitigate, misapplication of payments, failing to correct errors, and failing to respond to or correct inaccuracies KUSTER demanded in qualified written requests thereby ***"consciously doing a wrong because of dishonest purpose or moral obliquity"*** Black's Law Dictionary 10th ed.

d. failing to correct account information and continuing to charge excessive fraudulent interest and fees thereby ***"operating with furtive design or ill will."*** *Id.*

59. DEUTSCHE has breached the contract with KUSTER in accordance with HAW.STAT.tit. 27, §1-304 for conduct in violation of the Implied Covenant of Good Faith and Fair Dealing by acting in Bad Faith as enumerated in paragraphs 54-58.

60. OCWEN has exercised bad business judgment in regards to it's business relationship with KUSTER and the servicing of KUSTER's Mortgage in accordance with HAW.STAT.tit. 27, §1-304 for conduct in violation of the Implied Covenant of Good Faith and Fair Dealing by acting in Bad Faith as enumerated in paragraphs 54-58.

## 3. DEUTSCHE'S BREACH OF CONTRACT

61. In accordance with HRCP Rule 9 DEUTSCHE breached their contract and contractual obligations with KUSTER by failing to oversee the application of payments or proceeds in accordance with the Mortgage which states in pertinent part on page 4, section 2, paragraph 1 (See EXHIBIT "1") "**…all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.**" DEUTSCHE acted in bad faith during KUSTER's efforts to take corrective action and denied KUSTER the opportunity to benefit from the fruits of the contract.

62. DEUTSCHE breached their contractual obligations to KUSTER in accordance with the Mortgage.

63. DEUTSCHE acted in bad faith by breaching the duty imposed as consequence of relationship established by contract.

## 4. OCWEN AND DEUTSCHE'S TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP TRANSCENDING THE MORTGAGE CONTRACT

64. DEUTSCHE and OCWEN committed a tort in accordance with HRS § 663 which by independently committing this tort and transcending the contractual relationship of the parties is a tortious violation of the breach of contract in accordance with HRS §663-1.2. OCWEN and DEUTSCHE were aware of their obligation and business relationship to KUSTER as the lender to the Mortgage. OCWEN and DEUTSCHE interfered with KUSTER's performance by knowingly misapplying payments, charging excessive interest and late fees by failing to apply payments, charging attorney's fees as a result of their failure to apply payments or correct errors in KUSTER's account, and failing to mitigate damages. OCWEN and DEUTSCHE's actions caused KUSTER injuries in the amount equal to interest on incorrect principal balance, late fees and penalties, inspection fees when no service was rendered, and legal fees.

65. OCWEN and DEUTSCHE acted in bad faith by breaching the duty imposed as consequence of relationship established by the Mortgage contract.

## 5. OCWEN AND DEUTSCHE'S VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)

66. OCWEN and DEUTSCHE engage in trade or commerce in the State of Hawaii and are subject to the consumer protection laws of the State of Hawaii in the conduct of their servicing and debt collection.

67. OCWEN and DEUTSCHE failed to meet their obligations as servicer and lender, respectively, to KUSTER's Mortgage by violating numerous provisions including, but

not limited to the items listed below in accordance with the FDCPA regarding KUSTER's Mortgage by:

    a. failing to accurately apply payments to KUSTER's Mortgage loan

    b. failing to timely and accurately respond to qualified written requests;

    c. charging excessive or improper fees for default-related services;

    d. failing to properly oversee the corporate procedures in review of loan servicing;

    e. wanton disregard and bad faith regarding recordation in the State of Hawaii Bureau of Conveyances.

    f. failing to correct errors in KUSTER's account after being given notice or errors;

    g. failing to take appropriate action to remediate inaccuracies in borrower's account.

    h. failing to meet the minimum expectations of the business relationship and use good business judgment

    i. providing KUSTER with false or misleading information in response to KUSTER's complaints; and

    j. failing to maintain appropriate staffing, training, and quality control systems.


## COUNT I

### OCWEN AND DEUTSCHE'S BREACH OF
### IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

68. The allegations in paragraphs 1 through 67 above are incorporated herein by reference.

69. OCWEN and DEUTSCHE violated the Hawaii Revised Statutes § 490:1-304 under HAW.STAT.tit. 27, §1-304 which states in pertinent part, "Every contract or duty within this chapter imposes an obligation of good faith in its performance and enforcement." OCWEN and DEUTSCHE acted in bad faith in regards to the lending and servicing of KUSTER's Mortgage contract.

70. As the appointed servicer and lender, respectively, of KUSTER's Mortgage, OCWEN and DEUTSCHE's duty under the Implied Covenant of Good Faith and Fair Dealing, and Hawaii Revised Statutes § 490:1-304 is derivative of the mortgage contracts.

71. OCWEN and DEUTSCHE acted in bad faith as they failed to correct errors and inaccuracies in KUSTER's account after they were aware of the errors and violations when KUSTER gave them notice of the violations and requested these errors by corrected.

72. OCWEN acted in bad faith and violated the Implied Covenant of Good Faith and Fair Dealing by exercising poor business judgment in regards to the business relationship with KUSTER failing to apply payments and correct inaccuracies in KUSTER's account, charging excessive interest, late fees, and penalties, and charging for property inspections without rendering such services.

73. DEUTSCHE acted in bad faith and violated the Implied Covenant of Good Faith and Fair Dealing by failing to oversee the servicing of KUSTER's Mortgage and correct errors in the account.

74. KUSTER did all, or substantially all of the significant things that the mortgage required him to do.

75. All conditions required for OCWEN and DEUTSCHE's performance had occurred.

76. OCWEN and DEUTSCHE were invested with a discretionary power affecting the rights of KUSTER and such power was exercised in bad faith.

77. KUSTER was harmed by OCWEN and DEUTSCHE's conduct through excessive interest, late fees, penalties, legal costs, property inspection fees, and threatened foreclosure.

**COUNT II**

**TORT LIABILITY FOR OCWEN AND DEUTSCHE'S BREACH OF**

## IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

78. The allegations in paragraphs 1 through 67 above are incorporated herein by reference.

79. OCWEN and DEUTSCHE violated the Hawaii Revised Statutes § 490:1-304 under HAW.STAT.tit. 27, §1-304 which states in pertinent part, "Every contract or duty within this chapter imposes an obligation of good faith in its performance and enforcement." OCWEN and DEUTSCHE acted in bad faith in regards to the lender and servicing or KUSTER's Mortgage contract.

80. OCWEN and DEUTSCHE, by committing the tort of interference with a business relationship regarding KUSTER's Mortgage, transcended the contract and are liable for monetary and punitive damages.

81. As the appointed servicer and lender, respectively, of KUSTER's Mortgage, OCWEN and DEUTSCHE's duty under the Implied Covenant of Good Faith and Fair Dealing, and Hawaii Revised Statutes § 490:1-304 is derivative of the mortgage contracts.

82. OCWEN and DEUTSCHE acted in bad faith as they failed to correct errors and inaccuracies in KUSTER's account after they were aware of the errors and violations when KUSTER gave them notice of the violations and requested these errors by corrected.

83. OCWEN acted in bad faith and violated the Implied Covenant of Good Faith and Fair Dealing by exercising poor business judgment in regards to the business relationship with KUSTER failing to apply payments and correct inaccuracies in KUSTERR's account, charging excessive interest, late fees, and penalties, and charging for property inspections without rendering such services.

84. KUSTER did all, or substantially all of the significant things that the mortgage required him to do.

85. All conditions required for OCWEN and DEUTSCHE's performance had occurred.

86. OCWEN and DEUTSCHE were invested with a discretionary power affecting the rights of KUSTER and such power was exercised in bad faith.

87. KUSTER was harmed by OCWEN and DEUTSCHE's conduct through excessive interest, late fees, penalties, legal costs, property inspection fees, and threatened foreclosure.

## COUNT III

### OCWEN AND DEUTSCHE'S
### UNFAIR AND DECEPTIVE ACTS OR PRACTICES

88. The allegations in paragraphs 1 through 67 above are incorporated herein by reference.

89. OCWEN and DEUTSCHE have engaged in Unfair and Deceptive Acts or Practices in accordance with HRS §480 and §480-2.

90. KUSTER sustained injuries in the amount equal to charges of excessive interest, penalties, legal fees and costs, late fees in the amount equal to all fraudulent inspection fees, all late charges, all interest based off of the principal balance that did not reflect all payments made by KUSTER, and all legal fees charged as a result of the misapplication of payments.

91. OCWEN and DEUTSCHE violated Hawaii Revised Statutes §480 during 2011 and 2012 when they failed to apply payments to KUSTER's Mortgage loan and failed to correct the errors when requested.

92. Hawaii Revised Statutes § 480-2(a) states, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. OCWEN and DEUTSCHE knowingly engaged in Unfair and Deceptive Acts or Practices by misapplying payments made by KUSTER, failing to correct errors, failing to provide accurate accounting, and failing to respond to requests to correct errors.

93. As the appointed servicer and lender, respectively, of KUSTER's Mortgage, OCWEN and DEUTSCHE's duty under Hawaii Revised Statutes § 480-2 is derivative of the Mortgage contracts.

94. OCWEN and DEUTSCHE violated Hawaii Revised Statutes §480, § 480-2, and §480-13 in their performance and enforcement by failing to apply payments to the Mortgage and failing to correct errors in KUSTER's account.

95. OCWEN and DEUTSCHE's malfeasance has resulted in injury to KUSTER.

96. OCWEN and DEUTSCHE did not take appropriate action to remediate inaccuracies in KUSTER's account.

97. OCWEN and DEUTSCHE failed to correct account information.

## COUNT IV

### BREACH OF CONTRACT

98. The allegations in paragraphs 1 through 67 above are incorporated herein by reference.

99. In accordance with HRCP Rule 9 DEUTSCHE breached their contract and contractual obligations with KUSTER by failing to oversee the application of payments or proceeds in accordance with the Mortgage which states in pertinent part on page 4, section 2,

paragraph 1 (See EXHIBIT "1") "**…all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.**" DEUTSCHE acted in bad faith during KUSTER's efforts to take corrective action and denied KUSTER the opportunity to benefit from the fruits of the contract.

100. DEUTSCHE breached their contractual obligations to KUSTER in accordance with the Mortgage.

101. DEUTSCHE acted in bad faith by breaching the duty imposed as consequence of relationship established by contract.

102. KUSTER did all, or substantially all of the significant things that the mortgage required him to do.

103. All conditions required for DEUTSCHE's performance had occurred.

## COUNT V

### OCWEN AND DEUTSCHE'S TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP TRANSCENDING THE MORTGAGE CONTRACT

104. The allegations in paragraphs 1 through 67 above are incorporated herein by reference.

105. DEUTSCHE and OCWEN committed a tort in accordance with HRS § 663 which by independently committing this tort and transcending the contractual relationship of the parties is a tortious violation of the breach of contract in accordance with HRS §663-1.2. OCWEN and DEUTSCHE were aware of their obligation and business relationship to KUSTER as the lender to the Mortgage. OCWEN and DEUTSCHE interfered with KUSTER's performance by knowingly misapplying payments, charging excessive interest and late fees by failing to apply payments, charging attorney's fees as a result of

their failure to apply payments or correct errors in KUSTER's account, and failing to mitigate damages. OCWEN and DEUTSCHE's actions caused KUSTER injuries in the amount equal to interest on incorrect principal balance, late fees and penalties, inspection fees when no service was rendered, and legal fees.

106. OCWEN and DEUTSCHE acted in bad faith by breaching the duty imposed as consequence of relationship established by the Mortgage contract.

107. OCWEN failed their obligations to exercise good business judgment on behalf of DEUTSCHE.

108. DEUTSCHE failed to oversee the servicing of KUSTER's Mortgage and fulfill their obligations and the Mortgage Lender.

109. KUSTER sustained injuries in the amount equal to charges of excessive interest, penalties, legal fees and costs, late fees in the amount equal to all fraudulent inspection fees, all late charges, all interest based off of the principal balance that did not reflect all payments made by KUSTER, and all legal fees charged as a result of the misapplication of payments.

## COUNT VI

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

110. The allegations in paragraphs 1 through 67 above are incorporated herein by reference.

111. OCWEN and DEUTSCHE violated the FDCPA 15 USCS § 1692 by using abusive, deceptive, and unfair debt collection practices regarding KUSTER's Mortgage.

112. OCWEN and DEUTSCHE failed to apply KUSTER's Mortgage payments causing them to charge excessive late fees and penalties, interest on a higher principal amount,

inspection fees when services were never rendered, and legal fees and costs. OCWEN and DEUTSCHE failed to correct these errors after KUSTER gave them notice of the inaccuracies and errors.

113. OCWEN and DEUTSCHE used abusive debt collection practices by threatening foreclosure and refusing to correct errors in KUSTER's account.

## PRAYER FOR RELIEF

WHEREFORE, KUSTER respectfully requests that judgment by entered in his favor and against OCWEN and DEUTSCHE as follows:

1.  On Count I, judgment against OCWEN and DEUTSCHE for breaching their contractual obligations and violating the Implied Covenant of Good Faith and Fair Dealing regarding KUSTER's Mortgage, restitution or other remedial relief to compensate KUSTER as a victim of OCWEN and DEUTSCHE's unlawful conduct; cost of interest, late fees and penalties, attorney fees and costs of investigation; compensatory and punitive damages and any other damages as the Court deems proper.

2.  On Count II, judgment against OCWEN and DEUTSCHE for breaching their contractual obligations and violating the Implied Covenant of Good Faith and Fair Dealing regarding KUSTER's Mortgage, restitution or other remedial relief to compensate KUSTER as a victim of OCWEN and DEUTSCHE's tortious conduct; cost of interest, late fees and penalties, attorney fees and costs of investigation; punitive damages; and monetary damages including but not limited to special damages and legal fees as the Court deems proper.

3.  On Count III, judgment against CHASE for Unfair and Deceptive Acts or Practices in accordance with HRS §480, restitution or other remedial relief to compensate KUSTER as a victim of OCWEN and DEUTSCHE's unlawful conduct; and attorney fees and costs of investigation; compensatory and punitive damages; and other damages including but not

limited to special damages, compensatory and punitive damages, cost of additional interest, penalties, inspection fees, late fees, and legal fees as the Court deems proper.

4. On Count IV, judgment against DEUTSCHE for breaching their contractual obligations regarding KUSTER's Mortgage, an order requiring disgorgement of unlawful gains obtained by DEUTSCHE as a result of their unlawful conduct; restitution or other remedial relief to compensate KUSTER as a victim of DEUTSCHE's unlawful conduct; and attorney fees and costs of investigation and punitive damages.

5. On Count V, judgment against OCWEN and DEUTSCHE for tortious interference with a business relationship transcending the contract with KUSTER, an order requiring disgorgement of unlawful gains obtained by OCWEN and DEUTSCHE as a result of their unlawful conduct; restitution or other remedial relief to compensate KUSTER as a victim of OCWEN and DEUTSCHE's unlawful conduct; and attorney fees and costs of investigation and punitive damages.

6. On Count VI, judgment against OCWEN and DEUTSCHE for violating the FDCPA in regards to KUSTER's Mortgage, an order requiring disgorgement of unlawful gains obtained by OCWEN and DEUTSCHE as a result of their unlawful conduct; restitution or other remedial relief to compensate KUSTER as a victim of OCWEN and DEUTSCHE's unlawful conduct; for all compensatory damages, attorney fees and costs of investigation, and punitive damages.

7. For all other and further relief as the Court may deem just proper and equitable.

    DATED: Tucson, Arizona; August 6, 2015.


    /s/ Stuart E. Ragan
    STUART E. RAGAN

    Attorney for the Plaintiff
    LOTHAR KUSTER